## TUSTIN v. ADAMS et al.

(Circuit Court, D. Washington, S. D. May 17, 1898.)

1. HOMESTEAD.
   Public land which has in good faith been inclosed, extensively improved, and lived upon for a number of years, although it has not been entered as a homestead, is not subject to entry under the homestead law by other parties.

2. HUSBAND AND WIFE—COMMUNITY PROPERTY.
   A sale, by the husband, of a house built on public land in which the wife had a community interest, is binding on the wife.

This was a suit in equity by Frances M. Tustin against Phoebe D. Adams and Spencer Jacobs to determine the rights of contesting homestead claimants to public lands.

John C. Stallcup, for complainant.
Danson & Huncke, for defendants.

HANFORD, District Judge. This suit is to obtain a judicial determination of the rights of contesting homestead claimants under the land laws of the United States. On December 13, 1889, the complainant, Mrs. Frances Tustin, offered to file in the United States district land office at North Yakima her application to enter as a homestead the tract of land in controversy, but her application was rejected by the register and receiver for the reason that the land is part of an odd-numbered section, and was at that time supposed to be included in the land grant to the Northern Pacific Railroad Company. In subsequent proceedings in the land department the claim of the railroad company has been set aside. Subsequent to the date of complainant's application to enter the land as a homestead, the defendant Mrs. Adams claimed the same tract as a homestead, and in the contest proceedings between them the land department finally decided that Mrs. Adams had the better right, and a patent conveying the title has been issued to her. In the amended bill of complaint filed herein, the decision of the secretary of the interior containing a recital of the facts and the secretary's conclusions of law is set forth in full, and the complainant alleges that the facts as found and set forth in the secretary's decision are such as to entitle her legally to a decree declaring her to be the real owner of the land, and that Mrs. Adams holds the title as trustee, and requiring her to convey the same to complainant. The defendants have demurred to the amended bill, and the case has been argued and submitted by counsel for the parties, respectively, upon the demurrer.

In the argument counsel for the complainant insists that the only material facts shown by the decision of the secretary of the interior are:

"First. That on the 13th day of December, 1889, the plaintiff herein, Frances M. Tustin, duly applied to enter the tract of land in controversy herein as a homestead under the land laws of the United States, and thereafter fulfilled all lawful requirements in relation thereto. Second. That a year and ten days afterwards, to wit, December 23, 1890, defendant herein Phoebe D. Adams applied to enter the same tract as a homestead. Third. That defendant's application was at first rejected on two grounds, one of which was plaintiff's prior application, but that this ruling was afterwards reversed by the various officers of the department, and decided in defendant's favor, and a patent to said lands issued to her."

This statement of facts is, indeed, quite simple, and success would be easy for the complainant if her counsel could eliminate from the case all other facts, and confine the inquiry to questions as to the rights of the parties arising from his statement. Were the controversy restricted within t ⸳ narrow limits proposed, I should agree with him that the only logical and legal conclusion to be drawn would be that his client is entitled to the land. The premises, however, are false in two particulars, and the argument built thereon is necessarily unsound. In the first place, it is not true that the secretary of the interior, in his decision, found as a fact that the complainant "fulfilled all lawful requirements in relation" to her homestead claim. The law requires as a prerequisite to perfecting a title to land under the homestead law that the homestead claimant shall make a peaceable entry upon unappropriated public land, and establish a home thereon, by either erecting a dwelling house, or purchasing from the owner a house suitable for habitation, and continued residence upon and cultivation and improvement of the land. The secretary's decision contains no findings of such facts in the complainant's favor.

In the second place, it is necessary, in order to reach a just decision in accordance with the legal rights of the parties, to take into consideration the facts as to the status of each party,—as to the nature and condition of the land, as to the date and manner of taking possession, as to the improvements made upon the land, and as to the good faith of each in meeting the requirements of the homestead law. The facts set forth in the secretary's decision, which I deem important and material, are as follows, viz.:

"The tract here involved, viz. the N. W. ¼ of Sec. 31, T. 13 N., R. 19 E., North Yakima, Washington, land district, is within the primary limits of the grant to the Northern Pacific Railroad Company, branch line, the withdrawal for the benefit of which became effective July 11, 1879. Map of definite location was filed May 24, 1884. * * * In 1880, J. M. Adams, who was at that time receiver of the land office at North Yakima, took possession of the tract, and began fencing, irrigating, and otherwise improving it. Supposing, under the rulings of the department at that time, that it was railroad land, he filed with the Northern Pacific Railroad Company his application to purchase said tract when the company should have acquired title thereto, and on June 22, 1881, he received from the general land agent of said company a card acknowledging the receipt of his application. In the spring of 1884, Joshua L. Tustin built a small house on one corner of the tract, and on March 21, 1884, he filed his homestead application for the land. This application was rejected for the reason that 'it does not appear or is not shown that the tract was occupied bona fide at the date of withdrawal of June 11, 1879, for the benefit of the

branch line of the Northern Pacific Railroad.' Tustin appealed, and a hearing was ordered by your office to determine the status of the tract. At this hearing, which was held on May 7, 1884, Adams was allowed to intervene. The record of the evidence submitted at said hearing remained in the local office unacted upon until September 20, 1888, when it was sent up with the report that the case had been dismissed at the request of all parties; Tustin having filed a dismissal of his contest on September 7, 1888. July 30, 1889, Adams, who had become register of the land office at Spokane, Washington, filed his timber-culture application for said tract. This application was withdrawn by his attorney on September 21, 1889, and on the same day the tract was listed by the Northern Pacific Railroad Company. December 13, 1889, Mrs. Frances M. Tustin applied to enter this tract as a homestead, alleging in an affidavit filed with her application that she was the wife of Joshua L. Tustin, and that she had been deserted by him on December 6, 1889. Said application was rejected on account of the railroad selection, and Mrs. Tustin appealed. * * * About December 1, 1890, Adams died, and on December 23d. following, his widow, Mrs. Phoebe D. Adams, applied to make homestead entry of the tract in question. Said application was rejected on account of the pendency of the railroad company's appeal and the prior application of Mrs. Tustin, and from this action Mrs. Adams appealed. She also filed motion for leave to intervene in the contest between Mrs. Tustin and the railroad company, and this motion, together with all other papers filed by her, was forwarded to the department. * * * The evidence shows that from the time J. M. Adams took possession of this tract, in 1880, up to the date of his death, he was constantly improving it; that he brought water several miles to irrigate it; that at the time of his death practically the whole tract was irrigated and under cultivation; and that he had thereon a good dwelling house and several outhouses. Since his death his wife and children have continued to reside on the land. In 1888, Adams, in order to settle the dispute between himself and Joshua L. Tustin, paid Tustin $540 to relinquish his contest, abandon all claim he might have to the tract, and change his residence. * * * About the last of May or first of June, 1889, Tustin and his wife moved to the Big Bend country, one hundred and fifty miles distant, where Tustin filed a pre-emption declaratory statement for a certain tract in Douglas county, Washington. They camped on this pre-emption tract in the Big Bend country for two days, and then went to the home of Mrs. Tustin's mother, adjoining the land in controversy, where they remained three weeks. At the expiration of that time they again took up their residence in the house they had formerly occupied on the tract in dispute, the same house that Tustin had sold to Adams only a short time before. The testimony is conflicting as to whether or not they made a forcible entry on the land at this time. A preponderance of the evidence shows, however, that at the time the Tustins made their original settlement, in 1884. Adams had all the tract inclosed with a wire fence, except one corner down under a hill; that Tustin built his house on that uninclosed corner; that afterwards Adams extended his fence entirely around the tract, and Tustin made an opening therein for entrance and exit; that after Tustin and his wife left in the spring of 1889 Adams had the opening closed; and that when the Tustins returned to the land they broke the fence to get in. December 6, 1889, Joshua L. Tustin left, and three days later Mrs. Tustin made out her homestead application as a deserted wife, filing the same on December 13, 1889. A decree of divorce was granted Mrs. Tustin on July 13, 1891. No improvements have been placed on the land by Mrs. Tustin since her return from the Big Bend country. In the fall of 1890 she attempted to have some plowing done, but was restrained by an injunction. * * *"

In the argument counsel for the complainant takes the ground that on the 13th day of December, 1889, Mr. and Mrs. Adams had no standing as homestead claimants because they had not then filed a homestead application in the land office, and on this date Mrs. Tustin made a proper application to enter the land as a homestead, and then and thereby her right to the land was initiated. In effect this argument is a disclaimer of any right based upon prior

occupation, or improvement of the land by Mrs. Tustin or her husband, and I understand that her whole case rests upon what she herself has done on and subsequent to the date mentioned. Let it be conceded that at the time Mrs. Tustin tendered her homestead application for filing in the land office the Adamses had no standing as homestead claimants, and that the defendants' title was initiated subsequent to December 13, 1889, still they were in possession of the land, had it inclosed, and were the owners of the improvements which they had made and paid for. Their occupation, inclosure, and cultivation of the land was not, in view of the facts recited in the secretary's decision, mala fide. No individual was wronged thereby, and only the government of the United States could legally institute proceedings to dispossess them. Under the circumstances mentioned, Mrs. Tustin could not legally initiate any right to the land under the homestead law. The policy of the government in offering public lands to the heads of families upon the terms prescribed in the homestead law, is benevolent, and the act is to be liberally construed in favor of the class of citizens intended to be its beneficiaries, but the benevolent spirit of the law does not sanction such rank injustice as the forcible seizure and appropriation by one individual of houses and costly improvements owned by others, nor the forcible breaking of inclosures, even though as against the government the inclosures are unlawful. Atherton v. Fowler, 96 U. S. 513–520; Haws v. Mining Co., 160 U. S. 303–319, 16 Sup. Ct. 282. The house occupied by the complainant upon the premises was erected by her husband after her marriage, and before her separation from him; therefore it was community property under the laws of Washington territory in force at that time. By virtue of her marriage the complainant had an interest in the house as community property, and she never acquired any other right to it. The house being upon public land, the only title which its owners could claim was a chattel interest, and the husband being the manager of the community property, and expressly authorized by the statutes then in force to sell and dispose of the community personal property, the contract which he made, whereby he sold the house to J. M. Adams for a consideration of $540, was valid, and the complainant was bound by it, exactly as she might be bound by any other contract made through a duly-authorized agent. Absolute want of good faith on the part of the complainant in claiming this land under the homestead law clearly and conclusively appears by the taking possession of this house, which her husband had previously sold to J. M. Adams, without his consent. I consider that the demurrer to the amended bill should be sustained for the reasons that it is shown conclusively by the findings of the secretary of the interior that the land was not, on or subsequent to December 13, 1889, subject to entry by the complainant under the homestead law, and she has not fulfilled any of the requirements of the law as to residence upon and cultivation and improvement of the land.