## STURTEVANT v. VOGEL et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

### No. 1,576.

1. MINES AND MINERALS (§ 22*) — REQUISITES OF VALID LOCATION OF CLAIM — RECORDING LOCATION NOTICE.

Rev. St. § 2324 (U. S. Comp. St. 1901, p. 1426), specifying the requirements of records of mining claims, does not require the recording of loca-

---

tion notices, but leaves that subject open to legislation by the states or to regulation by the miners.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 45; Dec. Dig. § 22.*]

**2.** MINES AND MINERALS (§ 22*)—REQUISITES OF VALID LOCATION OF CLAIM IN ALASKA—RECORDING LOCATION NOTICE.

Act Alaska, June 6, 1900, c. 786, § 15, 31 Stat. 327, while providing for the recording of instruments, including notices of mining locations, "Provided, notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice," does not require, but merely permits, the recording of such notices, nor does it provide that the failure to record shall work a forfeiture of rights, and such forfeiture does not follow in the absence of a well-established rule or custom of the miners of the district to that effect.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 22.*]

**3.** MINES AND MINERALS (§ 19*) — VALIDITY OF LOCATION OF CLAIM—ERROR IN NOTICE.

An error in the location notice of a mining claim in its reference to the location of a permanent monument is not material in an action between the locators and a subsequent locator, where the claim was properly marked by stakes, and especially where the subsequent locator never saw the notice and could not have been misled thereby.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 37–39; Dec. Dig. § 19.*]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The plaintiff in error brought ejectment against the defendants in error to recover the possession of a placer mining claim. On July 23, 1903, the defendants in error joined in the location of the Lillian Association claim, containing about 152 acres, and made discovery of gold thereon. There was evidence that they properly marked the boundaries of the claim, and that they placed on the initial stake their location notice, describing the claim by reference to the boundaries, and that this location notice remained there until January, 1905. On July 24, 1903, they duly recorded their location notice, but the notice was insufficient, in that it contained no description of the claim with reference to natural objects or permanent monuments so as to identify it. On November 5, 1904, the plaintiff in error located a claim, consisting of 20 acres within the boundaries of the Lillian Association claim. At that time there was no one visibly in possession of the Lillian, and the evidence is undisputed that the plaintiff in error at the time of making his location had no knowledge of the prior location, and was not notified thereof until about November 20, 1904. In his reply to the answer of the defendants in error, the plaintiff in error alleged that in the year 1903, and since, there was and has been a uniform, well-known custom among the miners and prospectors in the Cape Nome mining recording district, in which the premises in controversy are situated, requiring that the notice of location of any mining claim be filed for record and recorded within 90 days after the location, and that a failure to record within that time leaves the premises free, vacant, and open for location as if the ground had never been formerly located. The notice posted on the Lillian was as follows: "Notice is hereby given that the undersigned citizens of the United States have this day located and claim the following described placer mining ground, together with all the water and timber rights thereon, to wit: Commencing at the initial stake marked No. 1, of Lillian group, upon which a copy of this notice is posted, thence running 2,640 feet in an easterly direction to stake No. 2 of Lillian group, thence 2,640 feet in a westerly direction to stake No. 10 of Lillian group, thence 2,640 feet in a southerly direction to initial stake. Stake No. 1 adjoins S. E. corner stake of

Dead Eye placer claim 180 feet east from line of Wild Goose Telephone opp. ninth pole south from intersection of said telephone line, with Pioneer Mining Co. telephone line. Stake No. 10 lies 60 ft. S. E. from 5th pole on Wild Goose line north of said intersection, 150 acres, and situated on Wonder creek or river, which is a tributary of Center; thence Snake River, in the Cape Nome Mining District, District of Alaska. This claim shall be known as Lillian Association placer mining claim. Located this 23 day of July, A. D. 1903." Upon the evidence and the instructions of the court, the jury returned a verdict for the defendants in error.

John Rustgard, W. H. Metson, Campbell, Metson, Drew, Oatman & Mackenzie, and E. H. Ryan, for plaintiff in error.

Albert H. Elliott and William H. Packwood, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The plaintiff in error contends that, both by the laws of Alaska and the custom of the miners, the recording of the location notice within 90 days after location is essential to the life of the location, and that a failure to so record the same results in the forfeiture thereof. But one witness was called to prove the alleged custom of the miners, and his testimony falls short of showing the existence of any custom or regulation adopted by the miners, in the district where the claim is located, making the recording of the notice of location essential to the right to hold the same. The court in charging the jury said that such a custom can only be binding when established by clear and satisfactory evidence, and that no custom which may require the recording of a location certificate is good and valid in law unless it carries with it a provision that for noncompliance therewith the location shall be forfeited and void. The court further instructed the jury that the mining laws of the United States in force in Alaska, while they allow a location notice to be recorded, do not require such record as an essential to a valid location.

Section 2324, Rev. St. (U. S. Comp. St. 1901, p. 1426), provides that all records of mining claims shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim. This provision does not require that the location be recorded. It leaves the subject open to legislation by the states or to regulation by the miners. Haws v. Victoria Copper Mining Co., 160 U. S. 303, 16 Sup. Ct. 282, 40 L. Ed. 436; 1 Lindley on Mines (2d Ed.) 373, and cases there cited. It is contended that section 15, c. 786, Act June 6, 1900, 31 Stat. 327, requires that notice of the location of a mining claim shall be filed for record within 90 days of the discovery of the claim. The section requires recorders, upon the payment of fees, to record separately certain classes of instruments, such as deeds, mortgages, certificates of marriage, wills, official bonds, etc., including affidavits of annual work done on mining claims, notice of mining locations and declaratory statements; and in subdivision 11 it adds to the list such other writings as are required or permitted by law to be recorded, including the liens of mechanics, laborers, and others:

"Provided. notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice."

This statute permits the recording of instruments. It contains no positive enactment that any of the enumerated instruments shall be recorded, nor does it provide that the failure to record any instrument shall work a forfeiture of rights thereunder. Obviously by the terms of this statute an unrecorded deed is not rendered invalid as between the parties, nor does the mere failure to record a mining location work a forfeiture thereof. We are therefore not called upon to decide the question, discussed by counsel, whether a statutory requirement that the location notice be recorded is mandatory or merely directory.

In the decisions of Montana relied upon by the plaintiff in error, we do not find support for his contention that, under the law of Alaska, failure to record location notice should be held to work a forfeiture of a mining claim. In King v. Edwards, 1 Mont. 235, the question for decision was whether the failure to perform the prescribed amount of work upon a claim resulted in forfeiture. The court found that it was generally considered, among the miners of the district in which the claim was situated, that such a failure would have that effect, and said that:

"Where a custom is plain, there is no room for construction, and the court must take it as it reads and give it its legal effect."

In Baker v. Butte City Water Co., 28 Mont. 222, 72 Pac. 617, 104 Am. St. Rep. 683, the question was whether the trial court had erred in excluding from the evidence the location notice of the defendant's claim. The Supreme Court affirmed the right of the Legislature to provide rules for the marking of the boundaries of mining claims, and for the record thereof, and to specify what the recorded paper must contain, and held that, since the notice failed to comply with the statute, it was not admissible in evidence. The decision in that case was affirmed in Butte City Water Co. v. Baker, 196 U. S. 119, 25 Sup. Ct. 211, 19 L. Ed. 409, in which the court answered the contention of the plaintiff in error, that the provisions of the Montana statute were too stringent and conflicted with the liberal purpose manifested by Congress in its legislation respecting mining claims, by saying:

"We do not think that they are open to this objection. They certainly do not conflict with the letter of any congressional statute; on the contrary, are rather suggested by section 2324. It may well be that the state Legislature, in its desire to guard against false testimony in respect to a location, deemed it important that full particulars in respect to the discovery shaft and the corner posts should be at the very beginning placed of record."

The trial court, in instructing the jury, relied upon a line of decisions of the Supreme Court of California and of the federal courts in this circuit. In McGarrity v. Byington, 12 Cal. 426, the court said:

"The failure to comply with any one of the mining rules and regulations of the camp is not a forfeiture of title. It would be enough to hold the for-

feiture as the result of noncompliance with such of them as make noncompliance a cause of forfeiture."

That decision was cited and followed by Judge Sawyer in Jupiter Min. Co. v. Bodie Con. Min. Co. (C. C.) 11 Fed. 666. In English v. Johnson, 17 Cal. 108, 76 Am. Dec. 574, the court said:

"But 'in the absence of any rule declaring that a failure to record avoided the entry or claim, we cannot see that this failure, when actual possession was taken by the claimant and kept—no forfeiture or abandonment shown—would avoid the claim as against a subsequent entry and location in due form."

In Bell v. Bed Rock Co., 36 Cal. 219, the court said:

"The failure of a party to comply with a mining rule or regulation cannot work a forfeiture unless the rule itself so provides."

In County of Kern v. Lee, 129 Cal. 369, 61 Pac. 1124, the court adhered to the doctrine of the prior decisions that, in the absence of a state or district requirement, the failure to record notice of location does not affect the validity of the location; and in the case of Daggett v. Yreka Min. Co., 149 Cal. 360, 86 Pac. 968, it was again held that, in the absence of a statute or local miners' law requiring the recording of a notice, the recording does not constitute in itself a location of any part of a legal location of the claim. In Last Chance Min. Co. v. Bunker Hill & S. Min. Co., 131 Fed. 579, 66 C. C. A. 299, this court held that the failure of the locator of the Bunker Hill claim to record his notice of location within the time prescribed by the Idaho statute did not work a forfeiture of the claim, there being no such penalty affixed by the statute; citing Jupiter Min. Co. v. Bodie Con. Min. Co. (C. C.) 11 Fed. 666, Bell v. Bed Rock T. & M. Co., 36 Cal. 214, and other cases from California and Arizona. In Zerres v. Vanina (C. C.) 134 Fed. 610, Judge Hawley construed Comp. Laws Nev. § 210, providing for the location of a lode mining claim, and declaring that within 90 days of the date of posting the location notices on the claim the locator shall record his claim within the mining district, etc., and held that, since the statute did not provide for a forfeiture for a failure to record within the time specified, the failure was insufficient to work a forfeiture of the locator's right. And in Ford v. Campbell, 92 Pac. 206, the Supreme Court of Nevada said that the intention that failure to comply with the statute should work a forfeiture of mining rights "ought not to be imputed to the Legislature except upon the very clearest language, not susceptible to any other reasonable construction," and quoted with approval the language of Judge Hawley in Zerres v. Vanina. Of similar import are Johnson et al. v. McLaughlin, 1 Ariz. 493, 4 Pac. 130, and Rush v. French, 1 Ariz. 99, 25 Pac. 816.

Error is assigned to the instruction given to the jury that, if there is a variance or discrepancy between the stakes and monuments on the ground and the recorded location certificate, the former will prevail over the latter, as superior evidence of the particular ground located and its boundaries. It is contended that this instruction was erroneous, not because the proposition of law therein expressed is in itself unsound, but because the evidence in the case indicated that, at the time when the location of the plaintiff in error was made, the

stakes marking the boundaries of the Lillian location had disappeared. But the record shows that the evidence on this feature of the case was conflicting. The defendant in error Vogel testified that on November 20, 1904, he found the stakes all in place. The court had instructed the jury that, when a valid location is once made, it vests in the locator the right of possession thereto, which cannot be divested by the obliteration or removal, without his fault, of the stakes and monuments marking its boundaries, or the obliteration or removal from the claim of the location notice posted thereon, and that marking the claim on the ground by stakes and monuments, with or without written notice, whereby the boundaries of the claim can be readily traced, is sufficient, and submitted to the jury the question whether the location had been so staked and marked. No exception was taken to those instructions. There is no evidence in the case to indicate, and it is not claimed by the plaintiff in error, that he was misled by the defect in the recorded notice of location, or that he ever saw or heard of the location notice. Indeed, he testified that he never saw it. In view of that fact, the case as it went to the jury stood precisely as it would have stood if no notice whatever of the location had been recorded. The plaintiff in error is therefore in no position to object to the instruction, the giving of which he now assigns as error.

Error is assigned to the refusal of the court to instruct in substance that, if the calls and distances given in the location notice posted on the ground do not correspond with those actually marked on the ground, the notice is misleading, and that fact must be taken into consideration in determining the markings as a whole, and that a person examining the ground and finding a posted location notice has the right to rely on the description of the ground so claimed by the locator or owner. The defect in the location notice was that the permanent monument to which it tied the claim was erroneously located. Any one finding the location notice posted on one of the stakes which marked the boundaries of the claim could observe that error at a glance. It would then devolve upon him to trace out the claim by reference to the calls and distances set forth in the notice, and to discover where it lay, and to disregard the obvious error in the reference to a permanent monument. The location notice was not by law or custom required to be posted on the claim or recorded. Stakes driven in the ground are the most certain means of identification. The location notice which, it was testified, was posted on the Lillian, described the claim by calls and distances to stakes, running from the stake on which it was posted. No one could have been misled by the erroneous call to the telephone pole.

We find no error for which the judgment should be reversed. It is accordingly affirmed.

ROSS, Circuit Judge (dissenting). By section 2324 of the Revised Statutes it is declared that in making a location of a mining claim "the location must be distinctly marked on the ground so that its boundaries can be readily traced." The same section of the statute expressly confers upon the miners of each mining district the

power to make regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, covering the location, manner of recording, and amount of work necessary to hold possession of a mining claim, subject to the requirement in respect to so marking the location as that its boundaries may be readily traced. And it has been uniformly held by the courts that the respective states and territories may make like rules and regulations not in conflict with any law of the United States upon the subject. Neither the act of Congress of 1866 nor of 1872 required such notices to be recorded. As a result, in some states and territories and in some mining districts the notice of location is required to be recorded, and in some it is not. But, whenever required, the express declaration of section 2324 of the Revised Statutes is that such record "shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." In respect to the mining ground of the territory of Alaska, however, Congress, in section 15 of the act of June 6, 1900, "making further provisions for a civil government for Alaska and for other purposes" (chapter 786, 31 Stat. 327), provided that "notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice." Smith v. Cascaden, 148 Fed. 793, 78 C. C. A. 459. The recording of the notice of location is therefore, by a statute of the United States, made one of the essential steps to a valid location of a mining claim in the territory of Alaska.

As shown in the prevailing opinion, the notice filed for record by the defendants in error was insufficient to meet the requirements of section 2324 of the Revised Statutes. It was therefore as if no notice at all was recorded. It therefore seems to me that the location under which the defendants in error claim was never perfected, because they did not take one of the essential steps required by the statutes of the United States; that is to say, they did not file for record within 90 days from the date of the discovery of the claim, nor at any time, a notice containing the name or names of the locators, the date of the location, and such a description of the claim located by reference to some natural object or permanent monument as would identify it. The case here presented, therefore, is not, in my opinion, one of forfeiture, for the defendants in error never took one of the essential steps required in making their location.

In the case of Last Chance Mining Company v. Bunker Hill & S. Mining & C. Co., 131 Fed. 579, 66 C. C. A. 299, referred to in the opinion of the court, there was a question of priority between the Last Chance mining claim and the Bunker Hill mining claim. Priority was asserted for the Last Chance only upon the fact that it was located, marked, and the notice of its location recorded before the location notice of the Bunker Hill was recorded. A statute of the state in which the claims were situate required such notice to be recorded within 15 days after the making of the location in the office of the recorder of the county, or with the recorder of the district

designated by the resident miners, as provided by section 3103 of the Revised Statutes of Idaho of 1887. That statute, however, prescribed no penalty for a failure to record such notice. The facts as found by the master, and which were accepted by the court, were that the Bunker Hill claim was located September 10, 1885, by one O'Rourke, who possessed the necessary qualifications, and who had theretofore discovered within its limits a vein of rock in place carrying silver and lead; that on the day named O'Rourke posted "a discovery notice of location," containing the name of the location and claim, the date of its location, a description of the claim by reference to such natural objects and permanent monuments as identified it, and reciting such other matters as were then required by the laws of the United States and the territory of Idaho; that at the same time O'Rourke marked the boundaries of the claim on the ground so that they could be readily traced, and then entered into the actual possession of the claim and commenced working it, which possession was maintained by him and his successors in interest; that on September 29, 1885, O'Rourke caused a notice of location of the claim, duly verified, to be recorded in the office of the recorder of the county in which it was situate; that prior to March 21, 1902, the complainant in that suit duly acquired, through mesne conveyances from O'Rourke, the title to the claim, and on the day last mentioned made application to the United States for a patent therefor, which application recited the facts just stated, and upon which application a patent was issued by the government to the complainant on the 17th day of November, 1903; that the Last Chance claim was duly located September 17, 1885, and the location notice thereof recorded on the 22d day of the same month; that prior to the discovery and location of the Last Chance its discoverers and locators "had actual knowledge of the discovery and location of the Bunker Hill claim; they had visited the discovery, read the notice posted thereon, saw the discovery stake, the east end stakes, and knew that the locator was in the actual possession of the claim, and was then engaged in development work thereon." Other facts appear in the stipulation of counsel in the case, as shown in 131 Fed. 584, 585, 66 C. C. A. 304, 305, in the opinion of the court. And upon the point in question we said:

"We do not think it necessary to decide whether a stipulation to the effect that a certain witness would, if present, testify in contradiction of one or more of the facts already agreed to by counsel, could be properly held to modify such prior stipulation, for the reason that upon the facts expressly conceded, found, and in no wise contested the Last Chance was located after the Bunker Hill, and while the latter was a valid, subsisting claim. At the time of the location of the Last Chance claim the time prescribed by the Idaho statute within which the Bunker Hill location should be recorded had not expired. The Last Chance locators had actual notice of the Bunker Hill location, had read the description of it, and the locator of the Bunker Hill was in actual possession of that claim and actually engaged in working it. No part of the claim, therefore, whether above or underground, was then open to location by any other person."

We further said:

"That the failure of the locator of the Bunker Hill claim to record his notice of location within the time prescribed by the Idaho statute did not work a for-

feiture of the claim, there being no such penalty affixed by the statute, is well settled [citing Jupiter Min. Co. v. Bodie Con. Min. Co. (C. C.) 11 Fed. 666; Bell v. Bedrock T. & M. Co., 36 Cal. 214; McGarrity v. Byington, 12 Cal. 426; Johnson v. McLaughlin, 1 Ariz. 493, 4 Pac. 130; Emerson v. McWhirter, 133 Cal. 510, 65 Pac. 1036; Rush v. French, 1 Ariz. 99, 25 Pac. 816]. Besides, the issuance by the government of its patent for the claim is conclusive evidence of the sufficiency of the steps taken by the complainant [citing Davis v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; U. S. v. Iron & S. M. Co., 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571; Montana Cent. Ry. Co. v. Migeon (C. C.) 68 Fed. 811]."

In the case of Last Chance Mining Company v. Bunker Hill & S. Mining & C. Co., therefore, it appeared that the claimants of the Last Chance claim entered upon the actual possession of the locator of the Bunker Hill claim while the latter was a valid, subsisting claim, and while its locator was actually engaged in working it. That ground was, therefore, not open to location by the Last Chance claimants, for which reason they acquired no right. And since the statute of the United States applicable to that case did not require the recording of such notices of location, and the statute of Idaho did not fix any penalty for the failure to record such notice within the time it prescribed, the government of the United States issued its patent in perfection of the Bunker Hill location, and this court very properly sustained that title, and held that the recording by the Bunker Hill claimant of his notice of location three days later than the time prescribed by the Idaho statute did not work a forfeiture of his rights. In the case now before us, however, there was no actual possession of the ground by the defendants in error, and they never at any time filed the notice of location required by the Alaska statute. The location under which they claim, therefore, lacked one of the essential elements of a valid location in Alaska. No question of forfeiture, in my opinion, arises in the case. The ground was confessedly vacant, and was therefore open to exploration and location, unless covered by a location which met the requirements prescribed by Congress.

For the reasons stated, I dissent from the judgment here given.