**SAKOW v. J. E. RILEY INV. CO. et al.**

No. 3809.

District Court of Alaska. Fourth Division. Fairbanks.
Feb. 3, 1939.

428

430

432

Cecil H. Clegg, of Fairbanks, for plaintiff.

John L. McGinn, Julien A. Hurley, and Charles E. Taylor, all of Fairbanks, for defendants.

PRATT, District Judge.

This is an action in the nature of ejectment and for damages for the detention of the property, the plaintiff alleging an ouster by the defendants in the month of September, 1934, and title in himself by virtue of a location he claims to have made on the 27th of October, 1930, of the Good Hope placer mining claim on Otter Creek, in the Otter Recording District, Division aforesaid. The action was commenced on the 3rd day of December, 1934.

The defendants filed a joint answer in which they set up that defendant Sheppard located the North Star and Blue Bird placer mining claims on July 6, 1926; that in August of 1930 he gave a lease to the Riley Investment Company, authorizing them to mine, by the dredging method, the said claims; that the defendant Riley Investment Company, ever since 1930, had been in the actual possession of said Blue Bird and North Star placer mining claims as lessee and was and is engaged in mining and dredging thereon; that said alleged Good Hope claim conflicted with said Blue Bird and North Star claims and was invalid by reason of the fact that the ground attempted to be located by the plaintiff was not unappropriated Government land and was not open to location.

Upon two trials the juries failed to agree and mistrials were declared. Upon a third trial a verdict was given in favor of the plaintiff for the possession of the ground and $22,500 damages. Judgment was entered on this verdict and a reversal took place in the summer of 1938, 9 Cir., 98 F.2d 8, 9 Alaska 337. Upon a retrial a verdict was given upon the 7th day of December, 1938, in favor of the plaintiff for the recovery of possession of the claim and for $45,000 damages. The defendants have filed a motion for a new trial.

## I.

■ 1. Defendants set up that the evidence was insufficient to justify the verdict, in that the plaintiff, by failing to file a certificate of location describing the claim with reference to some natural object, permanent monument, or well-known mining claim, failed to prove a valid location of the Good Hope mining claim.

They assert the plaintiff could not make out title in himself sufficient to make out a prima facie case, unless he showed, in addition to all other requirements for the location of a placer claim, the recording of a location certificate complying with each of the provisions of section 2, chapter 10, Session Laws of Alaska 1915. They maintain that the opinion of the United States Circuit Court of Appeals, upon the former appeal of this case, supports their contention.

An examination of the briefs of the parties upon said appeal shows that the appellants very clearly made such a claim in the appellate court upon the former appeal of this case and made an elaborate argument in favor of the same in their opening and reply briefs under their assignment of error No. 1.

An examination of the opinion of the Circuit Court of Appeals, however, will show that the said Circuit Court of Appeals did not refer to said contention in any manner, neither affirming it or disaffirming it, but reversed the case upon the grounds set forth in assignment of error No. 22, which was based upon other grounds. Therefore, it is necessary to consider and decide the matter.

The plaintiff produced evidence tending to show a valid location upon the 27th day of October, 1930. He offered in evidence a location certificate (which, although designated "Notice of Location," will be referred to hereafter as the "Location Certificate"). It was in words and figures as follows:

"*Ocotmber* 27. 1930 Notice of Location

"Notice here *be* given that I the undersigned here by locate and Claim 20. (twenty) *across* of ground for placer mining purposes described as follow to *with* being

"*f*rom this Initial stake 1320 feet down stream to post no. 2. thence 660 feet cross the creek to post no. 3. thence 1320 feet up stream to post no. 4. thence 660 feet back to this *Inintial* Stake

"*t*his claim is situated on rig*h* limit of Otter Creek a tributary of Iditarod River Otter recording precinct fourth divi*t*ion Territory of Alaska to be known

"Good Hoppe Claim

W*o*lter Sakow Locator By /s/ Walter Sakow
"*Vittniss* /s/ Pete Miscovich

"Gold Discovered Oct 27. 1930"

Endorsed:

"No. 14009. Notice of Location, Good Hope Claim, Located on the Right Limit of Otter Creek, Walter Sakow.

"Filed for Record at Request of Walter Sakow 12/22-1930 at 11-15 A. M. Recorded at Page 290 of Volume 2 of Loc. in the Recorder's office for Otter Precinct, 4th Div. of Alaska.

"/s/ D E Browne Recorder."

Plaintiff further produced testimony tending to show that the stakes, or corner posts, of the claim as set by him constituted somewhat permanent monuments under the conditions existing at the place where the stakes were set.

The defendants objected to the introduction of this location certificate upon the ground that it failed to describe the claim with reference to some natural object, permanent monument, or well-known mining claim so that it could be readily identified and that by reason of such defect it was void.

2. (a) Both Sheppard and Sakow located their claims when Chapter 10, Session Laws of Alaska 1915, was in full force.

Assuming (erroneously, as will be hereinafter set forth) that the 1915 Territorial law required the filing of a sufficient location certificate as an act of location, the case would fall fairly within the rule laid down by the Circuit Court of Appeals for the Ninth Circuit, the Supreme Court of the United States, and the Supreme Courts of California and Oregon in the following cases: Butte & Superior Copper Co. v. Clark-Montana Realty Co. et al., 9 Cir., 248 F. 609; Butte & Superior Copper Co. v. Clark-Montana Realty Co. et al., 249 U.S. 12, 27, 39 S.Ct. 231, 63 L.Ed. 447; Yosemite Gold Mining & Mill Co. v. Emerson, 208 U.S. 25, 28 S.Ct. 196, 52 L.Ed. 374; Stock et al. v. Plunkett, 181 Cal. 193, 183 P. 657; Steele v. Preble, 158 Or. 641, 77 P.2d 418.

Defendants relied upon an alleged location by Sheppard in 1926, and the plaintiff upon an alleged location of October 27, 1930. There was evidence that the defendants had actual knowledge of plaintiff's location and possession prior to the time they ousted him. If plaintiff's location certificate failed to describe his claim with reference to a natural object or permanent monument, it did not, in reality, in any way mislead or affect the defendants.

In the Butte & Superior Copper Co. case, supra, the Montana law of 1875, requiring a declaratory statement to be filed within twenty days of discovery, was important in the case.

The trial court refused to follow the decisions of the Supreme Court of Montana, holding that a failure to file the declaratory statement invalidated the location. The Circuit Court of Appeals sustained the position of the trial court.

The Supreme Court held, 249 U.S., page 25, 39 S.Ct. page 234, 63 L.Ed. 447:

"The District Court, and the Circuit Court of Appeals affirming it, decided both issues against appellant on the grounds: (1) That the Montana cases did not furnish the rule of decision for the federal courts, the better reasoning

being (for which cases were cited) that as the Montana statute did not impose a forfeiture hence none resulted from defects in the declaratory statement of the Elm Orlu. (2) That the Elm Orlu people were in possession of their claim, working the same—of which the Black Rock people had knowledge—and that hence the latter could not avail themselves of the defects in the location of the Elm Orlu. Yosemite Mining Co. v. Emerson, 208 U.S. 25, 28 S.Ct. 196, 52 L.Ed. 374, was adduced. In the latter ground we concur, and we need not express opinion of the other although it has impressive strength and was conceded to have in Yosemite Mining Co. v. Emerson. Indeed, there was a revulsion in the state against the ruling of the cases and a law was enacted making the issue of a patent for a mining claim conclusive evidence of compliance with the requirements of the laws of the state and making valid all locations under them theretofore made 'that in any respect had failed to comply with the requirements of such laws, except as against one who has located the same ground in good faith and without notice.'

"Yosemite Mining Co. v. Emerson was concerned with a regulation of the state of California which prescribed the manner of the location of a claim. The regulation had not been conformed to and the validity of the location was attacked on that ground by a subsequent locator who had had notice of the claim, he contending that there was forfeiture of it. The contention was rejected and we said, that to yield to it would work great injustice and subvert the very purpose for which the posting of notices was required, which was, we further said, 'to make known the purpose of the discoverer to claim title to the' claim 'to the extent described and to warn others of the prior appropriation.' The comment is obviously applicable to the asserted defects in the declaratory statement of appellees. It, like the California requirement, had no other purpose than 'to warn others of the prior appropriation' of the claim, and such is the principle of constructive notice. It—constructive no-

tice—is the law's substitute for actual notice, and to say that it and actual notice are equivalents would seem to carry the self-evidence of an axiom. Besides, in this case there was unequivocal possession of the Elm Orlu and it is elementary that such possession is notice to all the world of the possessor's rights thereunder. Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 12 S.Ct. 239, 35 L.Ed. 1063."

To the same effect is Steele v. Preble, 1938, 158 Or. 641, 77 P.2d 418.

(b) In 1931 the Legislature of Alaska repealed Chapter 10, S.L.A.1915 (Chapter 64, S.L.A.1931), and thereafter there was no Territorial law governing or providing for the filing of location certificates of mining claims located in 1930, or, in fact, on mining claims located prior to 1933, when another Territorial act was passed requiring location certificates. This act was not retroactive, however, and had no effect upon the Sakow location. Chapter 83, S.L.A.1933; Section 354 et seq., C.L.A.1933.

Consequently, as far as the Sakow location was concerned (there being no subsequent location before the repeal of the 1915 law), the necessity of a location certificate being filed by him in order to show title in himself was governed entirely by the general Federal mining laws or by the acts of congress relative to Alaska.

(c) Neither at the time of the trial of this case nor at any time before was there any Federal law or act of congress relative to Alaska which required the locator of a mining claim to record a location certificate.

The United States Circuit Court of Appeals for the Ninth Circuit so held in 1909 in a case from Alaska, to wit, Sturtevant v. Vogel, 167 F. 448, 3 Alaska Fed. 249. On page 450 of 167 F., the court says:

"Section 2324, Rev.St. (U.S.Comp.St.1901, p. 1426) [30 U.S.C.A. § 28], provides that all records of mining claims shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims

located, by reference to some natural object or permanent monument, as will identify the claim. This provision does not require that the location be recorded. It leaves the subject open to legislation by the states or to regulation by the miners. Haws v. Victoria Copper Mining Co., 160 U. S. 303, 16 S.Ct. 282, 40 L.Ed. 436; 1 Lindley on Mines (2d Ed.) 373, and cases there cited. It is contended that section 15, c. 786, Act June 6, 1900, 31 Stat. 327 [48 U. S.C.A. § 382] requires that notice of the location of a mining claim shall be filed for record within 90 days of the discovery of the claim. The section requires recorders, upon the payment of fees, to record separately certain classes of instruments, such as deeds, mortgages, certificates of marriage, wills, official bonds, etc., including affidavits of annual work done on any mining claims, notice of mining locations and declaratory statements; and in subdivision 11 it adds to the list such other writings as are required or permitted by law to be recorded, including the liens of mechanics, laborers, and others:

" 'Provided, notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice.'

"This statute permits the recording of instruments. It contains no positive enactment that any of the enumerated instruments shall be recorded, nor does it provide that the failure to record any instrument shall work a forfeiture of rights thereunder. * * * "

Section 2324 as amended is section 28, Title 30, U.S. C.A., and the act of congress of June 6, 1900, mentioned above, was a special act of congress for Alaska. It was section 379, C.L.A.1913, and is section 2925, C.L.A.1933, except that the compilers have erroneously left out of the eleventh subdivision after the word "provided" the following: "Notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice, and." 48 U. S.C.A. § 382.

■ (c) 1. In 1913 the legislature of the Territory of Alaska passed chapter 74, which made the filing of a location certificate an act of location.

On page 289, section 13, chapter 74, S.L.A.1913, it provides:

"Any person * * * may * * * locate a mining claim * * * in the following manner:" (Note that section 13 ends with a colon.)

"Sec. 14. He must * * * post * * * a notice of location thereof, containing * * * "(a), (b), (c), and (d).

"Sec. 15. At the time of posting the notice of location, he shall distinctly mark the location on the ground * * * " etc.

Section 16 provides for the performance of location work.

"Sec. 17. Within ninety days after discovery the locator shall record * * * a certificate of location. * * * " Specifies contents and requires that it be verified.

"Sec. 18. If the discoverer of any placer deposit fail to comply with any of the provisions of sections 14, 15, 16 and 17, within the time therefor specified, all right to appropriate any portion of the public domain, acquired by him by reason of his discovery, shall cease; * * * "

Note that section 13 ends with a colon, thus clearly making everything set forth in the succeeding sections acts of location, unless the context makes it otherwise.

Under said 1913 Territorial law the case of Cloninger v. Finlaison, 9 Cir., 230 F. 98, 4 Alaska Fed. 375, arose. The Session Laws required that the location certificate should not be accepted for record by the precinct recorder unless it was verified. It further required a description of the claim with reference to a natural object, permanent monument, or well-known mining claim. The location certificate in question was not verified and contained no such ref-

erence. The court held, on page 100 of 230 F.: "These two defects are such as to invalidate the location * * *."

It should be noted that section 18 of the 1913 act specifically provides that a failure to comply with any of the provisions of section 17 as to the contents of a location certificate terminates all right acquired by the discoverer. It does not mention any subsequent appropriator and is operative without any subsequent appropriation of the ground.

There was a subsequent locator in that case, and the above holding was invoked.

2. In 1915 the legislature of Alaska repealed the above-mentioned laws of 1913 and passed chapter 10, S.L.A.1915, which is quite different.

Section 1 contains all of the requisites for making a valid location. It provides:

"Any person qualified under the laws of the United States, who discovers upon the public domain within the Territory of Alaska, a placer deposit of gold, or other mineral which is subject to entry and patent under the mining laws of the United States, may locate a mining claim thereon in the following manner, to-wit:

"1st. He shall post, or write upon the initial post, stake, or monument on the claim, a notice of location containing:

"a. The name or number of the claim.

"b. The name of the locator or locators.

"c. The date of discovery and of posting notice on the claim.

"d. The number of feet in length and width of the claim.

"This notice shall be known as the location notice.

"2nd. He shall distinctly mark the location on the ground so that its boundaries can be readily traced, by placing at each corner or angle thereof substantial stakes, or posts, not less than three feet high above the ground and three inches in diameter, hewed on four sides; or by placing at each corner or angle thereof mounds of earth or rock not

less than three feet high and three feet in diameter and the stakes, posts or monuments so used must be marked with the name or number of the claim and the designation, by number, of the corner or angle. The initial stake or monument, shall be one of the corner stakes, posts or monuments of the claim located.

"If the claim is located on ground that is covered wholly or in part with brush or trees, such brush or trees shall be cut or blazed along the lines of such claim, so as to be readily traced.

"If located in an open country, the boundary lines shall be located by placing line stakes or line monuments so as to be readily traced from corner to corner of said claim."

After the above acts have been done and completed, a location exists, and title to the mining ground vests in the locator as against all but the United States.

Section 2 recognizes the existence of the completed location, calls it a "claim," and provides for filing a certificate of location within ninety days of discovery. It further recognizes that the location was complete by providing that: "A failure to record a certificate of location of claim as herein provided shall operate as and be deemed abandonment thereof, and the ground so located shall be open to re-location; provided, that if a full compliance with the preceding provisions of this act shall have been made before any location by another, such compliance shall operate to prevent the abandonment or forfeiture of such claim and save the rights of the original locator."

Section 18, Chapter 74, S.L.A.1913, had specifically provided that the rights acquired by discovery should cease at the end of ninety days if a certificate, complying with all of the provisions of the chapter, was not filed. There was no proviso in the 1913 laws permitting the filing of the location certificate after the ninety-day period.

It is apparent that in 1915, the legislature intended to make abandonment nothing but a defense on the part of a

·subsequent locator. The only meaning which can be giv-·en to the proviso is the above, because a claim cannot be abandoned and, at the same time, the abandonment pre-·vented. Nor can it be abandoned and, at the same time, the rights of the original locator saved.

The word "forfeit" should have been used instead of ·"abandon".

■ "Forfeiture is never complete until adverse claims ·are made to the property under other locations, while aban-·ment operates instanter. By abandonment the claim re-·verts to the public domain, while by forfeiture it goes to a subsequent locator." 40 C.J. 842, Section 294.

Section 18, Chapter 74, S.L.A.1913, provided that if the discoverer failed to comply with "any of the provisions ·of [section] * * * 17 [which provided for filing a location certificate and the various contents thereof] ·* * *, all right * * * acquired by him by reason ·of his discovery, shall cease."

In section 2, Chapter 10, S.L.A.1915, the legislature did not provide that a failure to comply with any of the pro-·visions of the section in regard to location certificates should ·be deemed an abandonment, etc., but made the general pro-·vision that, "A failure to record a certificate of location ·of claim as herein provided * * *," leaving it open to the usual interpretation that a substantial compliance was all that was necessary and that a forfeiture would be op-·erative only when it was less than a substantial compliance ·and an intervening locator stepped in.

In Northmore v. Simmons et al., 9 Cir., from Califor-·nia, 97 F. 386, there was a mining district regulation re-·quiring the sinking of a shaft within ninety days of loca-·tion. The court did not interpret this as any step in the location of the claim, but sustained it only as additional ·annual labor. This regulation was merely a condition im-·posed for the further continuance of the estate, just as is ·the requirement in section 2, c. 10, S.L.A.1915, and it would

have been as logical to hold the assessment regulation to be a step in the location of the claim as it would be to hold that the filing of a location certificate within ninety days is a necessary step where the statute did not make it specifically a step in the location.

In Wermer v. McNulty et al., 1887, 7 Mont. 30, 14 P. 643, a somewhat analagous situation was presented.

The laws of Montana provided (last paragraph, 14 P. page 644), " 'any person * * * who shall hereafter discover any mining claim * * * shall within twenty days thereafter make and file for record * * * a declaratory statement * * * on oath * * *.' " Rev. St. 1879, div. 5, § 873.

One of the two prior co-locators filed the declaratory statement and made the affidavit upon information he received from his co-locator, as the co-locator had made the discovery and had the personal knowledge. The defendants relocated the claim on the theory that the declaratory statement was invalid and the claim was open to location. On page 645 of 14 P., the court said: "The original act, creating the territorial government, provides * * * no law shall be passed interfering with the primary disposal of the soil. * * * It is not necessary for us in this case to inquire whether the territorial legislature went beyond its constitutional authority in imposing these additional burdens upon locators of mining claims; but, if it did not, the closeness with which it trenched upon such authority may well be considered as a persuasive reason why the courts should so construe them that they shall not be more burdensome than can be reasonably helped." The court held the affidavit on information sufficient.

It is to be noted that the Montana law specially made the filing of the declaratory statement an act of location. Even though the Montana law made the filing of the verified declaratory statement an act of location, the validity of the law was seriously questioned as imposing an un-

reasonable burden upon a locator. Preston v. Hunter et al., 9 Cir., 67 F. 996, 997.

Later Montana decisions were to the effect that the failure to file the declaratory statement made the location void, but in Butte & Superior Copper Co. v. Clark-Montana Realty Co., 9 Cir., 248 F. 609, at page 612, the court said: "The court below declined to follow the rule of the Montana decisions, for the reason that the locations of the parties to the present suit had been made prior to the date of those decisions, and they were therefore not binding upon a federal court, and for the further reason that the Montana statute had not provided that failure to record a notice which complied in all respects with the statute of the territory should work a forfeiture of a claim; the court holding that the better rule has always been that, if the recordation law does not expressly provide for a forfeiture for failure to record, the location is valid, though not recorded, * * *."

Upon appeal to the Supreme Court the case was decided upon another ground, the Supreme Court saying with reference to the holding of the Circuit Court of Appeals, last mentioned: "In the latter ground we concur, and we need not express opinion of the other although it has impressive strength and was conceded to have in Yosemite Mining Co. v. Emerson. * * *" Butte & Superior Copper Co. v. Clark-Montana Realty Co., 249 U.S. 12, 39 S.Ct. 231, 234, 63 L.Ed. 447.

■■ 3. Section 9, Chapter 10, S.L.A.1915, providing that any placer mining claim located in violation of the provisions of the act, shall be null and void, applies to section 1, section 3 (area of association claims), section 5 (length of individual and association claims, but repealed by chapter 70, 1927), section 6 (requiring written and recorded powers of attorney where claim is located by agent), as each of those sections provide for or limit acts of location. Section 9 does not apply to section 2, which, by its own wording, is not an act of location; does not make a

claim null and void under any conditions; provides its own penalty clause for failure to file a certificate within ninety days; and provides that such failure is important only in case of a subsequent locator. The provisions of section 9 likewise have no effect on section 4 as to assessment work, or to section 7 as to filing an affidavit as to annual labor, or to section 8, making it perjury to file a false affidavit of annual labor.

■ "It is axiomatic that the law does not favor forfeitures and that they are abhorred in equity * * *." Section 516, Snyder on Mines, Vol. 1; same general rule in 1 Lindley on Mines, page 629, note 63, with many citations.

"All of the state legislatures have enacted statutes requiring a record. All of these statutes prescribe a time within which this record must be made. But while they are mandatory on the question of a record in the first instance, they are directory merely, so far as they relate to the time for making the record, provided no adverse rights have intervened in the meantime. * * *" Section 418, Snyder on Mines, Vol. 1; same general rule in Zerres v. Vanina, C.C., 134 F. 610; in Vol. 1 Lindley on Mines, page 629; and in 40 C.J. 810.

In Sturtevant v. Vogel, 9 Cir., 167 F. 448, 452, 3 Alaska Fed. 249, the court quotes with approval the Supreme Court of Nevada in Ford v. Campbell, 29 Nev. 578, 92 P. 206, wherein it says: "The intention that failure to comply with the statute should work a forfeiture of mining rights 'ought not to be imputed to the Legislature except upon the very clearest language, not susceptible to any other reasonable construction.' "

■ Section 2, Chapter 10, S.L.A.1915, gave Sakow the right to file a location certificate any time before there was an intervening location, and, as there never was an intervening location, that right continued until the 1915 laws were repealed in 1931. Thereafter only the general

laws of the United States and special congressional laws with reference to Alaska governed the Sakow location, and, as those laws did not require any location certificate at all, he could safely have gone to trial without ever having filed one.

Sturtevant v. Vogel, 9 Cir., 167 F. 448, 450, 3 Alaska Fed. 249. On page 452 of 167 F. the court states with approval that in County of Kern County v. Lee, 129 Cal. 361, 61 P. 1124, "the court adhered to the doctrine of the prior decisions that, in the absence of a state or district requirement, the failure to record notice of location does not affect the validity of the location;" and cited a number of other cases to the same effect.

In the case of Vedin v. McConnell, 9 Cir., 22 F.2d 753, 5 Alaska Fed. 394, McConnell's location was on the 2nd day of July, 1921. Vedin's location was subsequent to that of McConnell. The mineral ground attempted to be located by McConnell belonged to one Linn and was not open to location until July 2, 1921. McConnell's location certificate was dated July 1 and states that he had that day relocated the claim. The certificate not only contained many defects on its face, but bounded the location by other claims which were shown by extraneous evidence not to bound the location.

The Vedin case does not involve the question here raised, as Vedin was a subsequent locator and the 1915 Territorial laws were in full force and effect.

█ 4. The interpretation of the defendants that section 2, chapter 10, S.L.A.1915, deprives a locator of his estate when he fails to file the location certificate before making title in an ejectment action, even though there is no subsequent location of the claim, would, if correct, bring about a situation in which the legislature would have violated the organic act of the Territory.

If the first abandonment clause of section 2, chapter 10, S.L.A.1915, works an abandonment without an interven-

ing locator, then the mineral ground passes back to the United States. In the next clause, the Territorial legislature offers to take back from the United States the ground just reverted and again give it to the locator upon his filing a location certificate. This the Territorial legislature of Alaska has no power to do, as it is forbidden so to do by the organic act of Alaska. Act of Congress, August 24, 1912, 37 Stat. 512, 514, sec. 9, 48 U.S.C.A. § 77. Sec. 475, C.L.A.1933.

Section 475, C.L.A.1933, 48 U.S.C.A. § 77, states: "The legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States, but no law shall be passed interfering with the primary disposal of the soil; * * * nor shall the Legislature pass local or special laws in any of the cases enumerated in the Act of July thirtieth, eighteen hundred and eighty-six [48 U.S.C.A. § 1471] · * * *."

For the Legislature of Alaska to cause the locator's estate in a mining claim to revert to the Federal government as abandoned ground and then for the Territory to later give that ground to the individual for the mere filing of a location certificate would be inconsistent with the laws of the United States, which make their own requirements as to how a mining claim may be procured. It would also be prohibited as an interference with the primary disposal of the soil on the part of the Territorial Legislature.

"Abandoned ground must be relocated in the full manner required by law." 2 Lindley on Mines, Section 645 A.; Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735; Sierra Blanca M. & R. Co. v. Winchell, 35 Colo. 13, 83 P. 628; Hoban v. Boyer, 37 Colo. 185, 85 P. 837; Lockhart v. Farrell, 31 Utah 155, 86 P. 1077; Brown v. Gurney, 201 U.S. 184, 26 S.Ct. 509, 50 L.Ed. 717.

Consequently, if the failure to file a location certificate caused the locator to abandon his ground, it would revert to the United States immediately. Hartman Gold Mining

Co. v. Warning et al., 1932, 40 Ariz. 267, 11 P.2d 854. And the attempt of the Legislature to give the ground to the former owner would certainly be against the laws of the United States.

In Betsch et al. v. Umphrey et al., 9 Cir., 270 F. 45, 5 Alaska Fed. 15, the Circuit Court of Appeals held that the legislature of Alaska was interfering with the primary disposal of the soil by providing in section 7, chapter 10, S. L.A.1915, that the failure to file an affidavit of annual labor should be deemed abandonment in favor of a relocator.

On page 46 of 270 F. the court said: "By Act of Congress of June 6, 1900, § 16, providing additional mining laws for Alaska (31 Stat. 328 [48 U.S.C.A. § 383]), it was enacted that—'Miners in any organized mining district may make rules and regulations governing the recording of notices of location of mining claims * * * and affidavits of labor, not in conflict with this act or the general laws of the United States.' "

On page 48 of 270 F:

"The act of the territorial Legislature of 1915 is in conflict with the general law of the United States, which gives to the owner of a located mining claim the right to hold and occupy the same so long as he shall perform the requisite annual assessment work thereon, and Congress reaffirmed that law as applicable to the territory of Alaska by the act of 1907, adding thereto only the provision above quoted. That act permits the filing of affidavits which shall be prima facie proof of the performance of annual work. But it makes provision for forfeiture only upon failure to perform the work. The act of the Alaskan Legislature set that provision aside, and declared that performance of the work shall not be sufficient, that forfeiture shall follow the failure to file an affidavit. To legislate thus was to transcend the authority conferred by the Enabling Act, was to interfere with the right of Congress to dispose of the public domain, was to destroy an estate which Congress grants in public lands, and was to exercise a power which Con-

gress never intended to delegate, the power to declare the forfeiture of mining claims.

"The judgment is reversed, and the cause is remanded to the court below, with instructions to enter a decree for the appellants."

From the above decision it appears very doubtful if the abandonment clause of the Territorial act of 1915 is good, even where there has been a subsequent locator. It appears quite certain that the United States did not authorize the Legislature to declare an abandonment and forfeiture and reversion of the land to the United States in the absence of a subsequent locator.

Again, if section 2 works a forfeiture of the claim, the provision would be invalid as being oppressively discriminatory against a placer locator in favor of a quartz locator.

Chapter 10, S.L.A.1915, section 14, requires the locator of a quartz claim to record a certificate of location, but provides no penalty for his failure so to do.

The last paragraph of section 21, chapter 10, S.L.A.1915, provides that, if the locator of a lode claim fails to file a location certificate, the burden of proof shall be upon the owner of the claim to show compliance with the provisions thereof.

The Fourteenth Amendment forbids states from denying equal protection of the law to persons subject to it, and it is submitted that Congress did not intend to grant to the Legislature of the Territory of Alaska a right to deny equal protection of the law to the persons subject to it when such a right is denied to the states and when such a right is inconsistent with all of the mining laws of the United States.

Although legislation which subjects all persons under similar circumstances and conditions in respect to privileges conferred and liabilities imposed is not a denial of the equal protection of the law (12 C.J. 1145, 16 C.J.S., Constitutional Law, § 505), it is not conceived that there

is any reasonable distinction between the placer and quartz locator when it comes to the filing of a location certificate and the effect thereof.

It is a truism that the court will not interpret a law in such a manner as to impute a provision for an illegal act when there is any reasonable construction to the contrary. To construe section 2, S.L.A.1915, chapter 10, as working an abandonment of the locator's estate prior to the intervention of the rights of a subsequent locator, would interpret the section as being invalid because of oppressive discrimination against placer locators as compared with quartz locators; would be invalid as being a special law when a general law as to all locators could be passed, special laws being prohibited by the act of congress of July 30, 1886, 24 Stat. 170, Sec. 1471, Title 48, U.S.C.A., Section 125, C.L.A.1933.

(d) If the position of the defendants were correct in regard to the provisions of section 2, Chapter 10, S.L.A.1915, being mandatory and the violation of any single provision thereof making the location voidable, the situation is such that the very technicalities they seek to invoke against the plaintiff would avoid their own locations and make them mere trespassers.

The location certificates filed for record by the defendant Sheppard for his Blue Bird and North Star claims failed to comply with section 2, Chapter 10, S.L.A.1915, as follows: They make no mention of a discovery having been made or the date thereof, or of posting a notice of location or the date thereof.

The location certificates of Mr. Sheppard being voidable constitute no location certificates, as he failed to file a location certificate as required by law at the peril of having a subsequent locator take the ground away from him. The subsequent locator was the plaintiff, Walter Sakow, upon the 27th of October, 1930, at a time when the 1915 Territorial laws were still in force and effect.

Upon the location being made by Sakow, the Sheppard claims were deemed abandoned and Sheppard could regain a right to the ground only by relocating the ground (which he never did). The result is that defendant Sheppard and his lessee had no color of title whatsoever in 1934 when they made the entry complained of by Sakow.

Sakow made a completed location in 1930 and his rights by reason of that location were not deemed abandoned under the Territorial law of 1915 (even if one erroneously assumed that it still applied in 1934 and thereafter) until there was a subsequent location (and there never was a subsequent location). This puts Sakow in possession of the ground under color of title even if he did not have title. The defendants, having no color of title, were mere intruders, and ejectment could be successfully maintained by Sakow, even though his location certificate were insufficient, as he had possession under color of title and having complied with the mining laws up to the point of filing a location certificate and his time for so doing having not yet expired. Section 479, 40 C.J. page 924.

When the defendants offered in evidence the Sheppard location certificates, they argued that the provisions of the 1915 Territorial law were directory and not mandatory and that therefore the certificates should be admitted. They were admitted by the court on the theory that the provisions of the 1915 Territorial law were directory and that, inasmuch as plaintiff had not been misled in any way by the defects in the certificates, he could not take advantage of the same.

The requirements of Chapter 10, S.L.A.1915, are drastic and must be held to be directory only. Babcock v. O'-Lanagan, 7 Alaska 171.

II.

(a) The defendants assign as error the admitting in evidence of the location certificate of the plaintiff "for the reason * * * that it failed to describe the prop-

erty sought to be located with reference to some natural object, permanent monument, or well-known mining claim so that it could be readily identified."

1. There was evidence that the corner posts set by the plaintiff and referred to in his location certificate constituted permanent monuments under the conditions there present. The matter was submitted to the jury and decided in favor of the plaintiff.

Upon the former appeal of this case (9 Cir., 98 F.2d 8, 9 Alaska 337), the Circuit Court of Appeals expressly held that the location certificate was admissible. This holding was in spite of the fact that the following matters had not been called to the attention of the Circuit Court of Appeals, to-wit:

(a) That Chapter 10, S.L.A.1915, had been repealed in 1931;

(b) That the 1915 Territorial law was a repeal of the 1913 Territorial law:

(c) That the location certificate, while an act of location under the 1913 Territorial law, was not so under the 1915 law;

(d) That the act of congress relative to Alaska (section 28, Title 30, U.S.C.A.; sections 381 and 382, Title 48, U.S.C.A.) permitted but did not require location certificates.

The preparing and recording of the location certificate also constituted a part of the testimony of the plaintiff Sakow, and the location certificate was corroborative thereof. It also tended to show a good faith attempt on his part to comply with the law in regard to locations.

In Nylund v. Ward, 67 Colo. 108, 187 P. 514, the Supreme Court of Colorado quoted another Colorado case with approval to the effect that the original defective certificate, failing to tie a claim, was admissible with the amended certificate for two reasons: First, that the orig-

inal, though fatally defective in one matter, may be considered as an element tending to show good faith on the part of the locator in attempting to comply with the law; second, the original plus the amended may be compared to ascertain whether they embrace the identical ground.

## III.

■ Assignments of error are predicated upon the Court's refusal to grant non-suits as to the several defendants.

After the overruling of their motions, the defendants proceeded to introduce evidence in support of their case. Consequently, they therefore waived a motion for non-suit. Walton et al. v. Wild Goose Mining & Trading Co., 9 Cir., from Alaska, 123 F. 209, 2 Alaska Fed. 110; Northwestern Steamship Co. v. Griggs, 9 Cir., 146 F. 472, 2 Alaska Fed. 605.

## IV.

■ The defendant Riley Investment Company asserts that plaintiff failed to show a valid placer location, alleging that he failed to mark the boundaries so that they could be readily traced; that he failed to meet the requirements of the statute as to substantial stakes being placed at each corner; and that the location certificate did not refer to a natural object, permanent monument, or well-known mining claim. Error is assigned to the court's refusing to direct a verdict in favor of said defendant.

There was evidence that the corner posts used and the boundaries marked were in compliance with the statute, but, even if there were some doubt on this subject, it would not inure to the benefit of said defendant, as it knew of plaintiff's location and the situs thereof, and also as the provisions of chapter 10, S.L.A.1915, in regard to marking the boundaries, the size of the corner posts, and the method of placing them in the ground, are directory and not mandatory.

As to the location certificate, the matters hereinabove set forth show that there was a sufficient certificate and that in reality plaintiff was not required by any law to have filed any location certificate at all. From October, 1930, when plaintiff located his claim until the spring of 1931, when chapter 10, S.L.A.1915, was repealed, plaintiff had a right to file a location certificate at any time before a subsequent locator initiated any rights. No such subsequent locator appeared, so, when the 1915 laws were repealed, the plaintiff still had the right up to the last minute to file the certificate, and, no rights having intervened, there was no law in force after the repeal of the 1915 laws requiring a certificate on the part of the plaintiff.

In Babcock v. O'Lanagan, 7 Alaska 171, on page 176, the court, with reference to the size of the monuments used by the plaintiff who had admitted that some of his monuments were not up to the statutory requirements, stated: "The requirements of territorial law are rather drastic, and I think must be held to be directory, when the federal statute only requires that the boundaries of a mining claim be distinctly marked upon the ground, so that a subsequent locator or prospector can easily find them. * * * I must hold that the monuments were sufficient compliances with law."

## V.

The undisputed evidence was that defendant Donnelley was in sole charge of the mining operations of the Riley Investment Company and that, after plaintiff had approached him and told him he would like to lease his claim to the Riley Investment Company for dredge mining, the defendant Donnelley went upon plaintiff's claim and watched him procure the results of the drilling he was doing thereon in order to show defendant Donnelley, as manager of the Riley Investment Company, that the ground was worthwhile mining. Defendant Donnelley had actual knowledge of plaintiff's claim and the situs of the same and yet made no mention of a lease now alleged to exist

between Sheppard and the Riley Investment Company through the defendant Donnelley, as its superintendent, giving the Riley Investment Company the right to mine the same ground that plaintiff was drilling on to the knowledge of the defendant Donnelley.

With full knowledge of the situation, the defendant Donnelley caused the Riley Investment Company dredge to go upon said ground and extract $45,000 in gold therefrom. The evidence showed that defendant Donnelley impounded said gold and placed it in a bank which he managed and controlled to await the results of the controversy over the title.

Error is assigned to the court's refusal to direct a verdict in favor of Donnelley.

All three defendants filed a joint answer in which they denied plaintiff's title and right of possession and in which they set up that the ground in controversy was a part of the Blue Bird and North Star claims located by defendant Sheppard in 1926 and that said Sheppard in August of 1930 had given a lease to said ground to the Riley Investment Company and that the dredge of the Riley Investment Company had gone upon said ground and was mining the same. Defendant Donnelley did not set forth any claim that he was acting as the mere servant, or employee, of the Riley Investment Company, or disclaim any interest in the controversy. He very definitely denied plaintiff's title and asserted an adverse right to possession and extraction of gold from the claim.

Although the general rule is that an action in ejectment should be brought only against the person in possession, there are several exceptions existing as where a defendant is admitted to defend the possession of another. 19 C.J. page 1068.

Ouster and possession by one with the knowledge and consent of another and for their joint benefit are acts of possession of both. 19 C.J. 1069.

 If a person procures himself to be made a party, he need not be shown to be in possession. 19 C.J. 1069.

On the subject of trespass in 63 C.J. 936, the following rule is stated: "Persons ordering or authorizing an act are jointly liable with those who do it. The rule has been applied to principals and their agents, partners and copartners, corporations and their officers, * * *. Where the act is done by one for the benefit of another and afterwards ratified by him, they are joint trespassers. * * * "

The defendant Donnelley caused the entry and ouster of the plaintiff and the continuance of said ouster and the extraction of the gold from the claim.

He was, in reality, in possession by and with the Riley Investment Company. He was in possession of the gold extracted by the dredge and was ratifying the continued possession of the mining claim and of the gold dust extracted therefrom.

He was actively opposing the right and title of the plaintiff and actively asserting the right and title of the Riley Investment Company to the possession of the mining claim and the gold extracted therefrom.

This was the fourth trial of the case and it was the first time that defendant Donnelley sought to make any distinction between his situation and that of the other defendants. He had been content to join with them in the answer and to rest his rights and their rights upon the same evidence.

 The complaint was for possession and damages, specially alleging the damages to be by reason of the extraction of $45,000 of gold from the claim. It stated all the facts as one cause of action. A demurrer was filed by the defendants jointly setting up that there was a misjoinder of causes of action, to-wit, a cause of action for possession and a cause of action for damages for said gold extracted.

Under section 3416, C.L.A.1933, a misjoinder of causes of action is the subject of a demurrer and under section

3460, C.L.A., aforesaid, it is provided that, if several causes of action appear in a pleading and are not separately stated, the pleading may be stricken out on motion. The defendants did not object to any intermingling of causes of action without separately stating them. The ejectment and damages constituted either one or two causes of action which were properly united in the same cause. The demurrer was properly overruled.

Section 3761, C.L.A.1933, provides that any person with a legal estate in real property and a present right of possession "may recover such possession, with damages for withholding the same, by an action. * * *" This section was taken from the laws of Oregon of October 11, 1862, Hill's Annotated Laws, section 316, and was made a part of the law of Alaska by congress in 1900. It was section 301, Carter's Alaska Code of Civil Procedure.

That said section authorizes the recovery of damages for the extraction of gold from a mining claim in an action to recover the possession of a mining claim is established by a long line of authorities. Trotter v. Town of Stayton, 45 Or. 301, 77 P. 395; Wythe v. Myers, 30 Fed.Cas. 766, No. 18119; Yuen Suey v. Fleshman, 65 Or. 606, 133 P. 803, Ann.Cas.1915A 1072; Norton v. Elwert, 29 Or. 583, 41 P. 926; Columbia & P. S. R. Co. v. Histogenetic Medicine Co., 14 Wash. 475, 45 P. 29; United States et al. v. Mid-Continent Petroleum Corp. et al., 10 Cir., 67 F.2d 37; Capital Garage Co. v. Powell, 98 Vt. 303, 127 A. 375; Sutherland on Damages, Vol. 3, 2nd Ed., Sec. 992; also secs. 993, 994, 1000; Vol. 3 Sedgwick on Damages, sec. 907; Yager v. Ring, 1 Alaska 305; Kimball v. Miller et al., 1 Alaska 347, 348.

Consequently, whether the cause of action for ejectment and damages is one or two causes of action, the demurrer for misjoinder of causes of action was properly overruled, and defendant Donnelley being liable for damages was not entitled to a directed verdict, even if it had not been shown that he was in possession of the mining claim.

 Defendant Donnelley was a proper party as having an interest in the subject of the action under section 3391, C.L.A.1933, and he did not disclaim any interest, but distinctly joined the other defendants in attacking plaintiff's title and asserting a right and title in defendants. He was not entitled to any directed verdict under the evidence.

The jury was specially instructed that they should not find against any defendant unless a preponderance of the evidence showed that he or it willfully participated in the trespass as alleged by the plaintiff. The jury found against all defendants.

## VI.

 The defendants further assert that the testimony failed to disclose that the defendant Sheppard was in possession of the property and that the court erred in refusing to direct a verdict in his favor for that reason.

As mentioned above, all defendants joined in one answer, the same attorneys representing all of them. The answer denied plaintiff's title; set up that the defendant Sheppard located the Blue Bird and North Star claims in 1926; that he had leased these claims to the defendant Riley Investment Company in August of 1930; that the Riley Investment Company had gone upon the ground in controversy, under the lease, and mined and was mining the same. The defendant Sheppard gave active testimony and effort in support of the answer and at no time disclaimed responsibility for the entry, ouster, possession, and mining of his tenant, the Riley Investment Company. He was claiming a right to royalty on all of the gold extracted from the claim.

Section 3762, C.L.A.1933, having been section 302 Carter's Alaska Code of Civil Procedure, as established by act of congress of 1900 and being taken from the laws of Oregon of 1862, Hill's Annotated Laws, section 317, provides that a tenant in actual possession who is sued in ejectment may disclaim any interest by setting up that he is a tenant of another and name him and his place of residence. The

landlord may then come in, or the plaintiff may cause him to be brought in as a defendant to defend the case.

Although the tenant in this case did not disclaim but actively forwarded his right, basing it upon the right of his landlord, the defendant Sheppard was a very proper party with an interest. Sec. 3391, C.L.A.1933. Defendant Sheppard in no way attempted to say that he was not a proper party in the action, but actively attempted to plead and prove his own and defeat plaintiff's title and to establish the rights of all defendants to the ground and gold extracted therefrom.

Ouster and possession by one with the knowledge and consent of another and for their joint benefit are acts of possession of both. 19 C.J. 1069; Treat v. Reilly, 35 Cal. 129.

If a person procures himself to be made a party, he need not be shown to be in possession. 19 C.J. 1069; Warren v. Carter, 92 Mo. 288, 5 S.W. 42; Gorham v. Brenon, 13 N.C. 174.

The claim of title to the ground in controversy by the defendant Sheppard, the lease by him to the Riley Investment Company, and the reiteration of the defendant Sheppard of the right of the Riley Investment Company to possession and the gold extracted from the ground in controversy and to his right to royalty out of said gold, clearly made defendant Sheppard liable for the ouster of the plaintiff, the possession of the Riley Investment Company, and as a joint trespasser. Under instructions which would have allowed the jury to exclude the defendant Sheppard from liability in the case, the verdict was against the defendant Sheppard.

It appears that the defendant Sheppard was not entitled to any directed verdict.

## VII.

With reference to the cross-examination of the defendant Sheppard, defendants maintain that matters were

brought out which were not cross-examination, and they state that the plaintiff was bound by the answers of the said witness, and other evidence contrary to his statements was not admissible. Section 4254, C.L.A.1933, provides: "The party producing a witness * * * may contradict him by other evidence * * *."

## VIII.

 Defendants complain that acts and statements of defendant Donnelley were allowed in evidence without there being such privity of relationship between Donnelley and Sheppard as would make Sheppard bound by the acts and statements.

The defendant Sheppard did not file any separate answer. The defendants' attorneys had the right, and their attention was called to this right by the Court, to submit a proper instruction to be given to the jury as to the effect of acts and statements of one defendant upon the liability of another. No such instruction was submitted.

Section 3591, C.L.A.1933, subdivision 5, requires the parties to submit such instructions as they deem necessary, and section 4263 mentions the subjects about which the Court is required by law to instruct the jury. Section 3595 requires the Court to give the jury such instructions as it deems necessary. If defendants deemed instructions on the point above mentioned to be necessary, it was their duty to submit the same, and especially after the Court called their attention to their right so to do.

## IX.

 Defendants maintain that the jury awarded excessive damages under the influence of passion and prejudice.

In this trial of the case, no evidence whatsoever was produced by the defendants showing that the extraction of the $45,000 worth of gold from the ground in controversy

cost them anything. This fact, together with the other evidence tending to show the trespass to be willful, makes the award of the jury fully within the law on the subject and the facts of the case.

## X.

The other grounds urged for the new trial either fall within the matters discussed or are not well taken.

There appearing to have been no error, the motion for a new trial is not granted.